IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-01289-RBJ

FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California Corporation,

    Plaintiff,

v.

WOODY CREEK VENTURES, LLC, a Colorado Limited Liability Company; and
PITKIN COUNTY TITLE, INC., a Colorado Corporation,

    Defendants.

---

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND DENYING DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY
JUDGMENT

---

Before the Court are cross-motions for summary judgment seeking a declaratory judgment as to whether a Right-of-Way over federal land negotiated by Fidelity constitutes a right of access as required by the title insurance policy held by Woody Creek. Woody Creek argues that this Right-of-Way isn't a "right" at all because it is revocable and expires after 30 years.

The Court has jurisdiction pursuant to 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy exceeds $75,000. The parties have fully briefed their motions and engaged in helpful oral argument before the Court. As I will explain below, the Court will grant Fidelity's motion and deny Woody Creek's cross-motion.

I.      **Factual Background**

This case is about a title insurance policy on a parcel of land that Woody Creek owns in Pitkin County near Aspen, Colorado.[1] The parcel in question is separated from another parcel previously owned by Woody Creek by a tract of land managed by the BLM.  A road called Discovery Way crosses over the BLM land and is the only way to access the remote parcel.  Woody Creek bought the parcel under the assumption that it had a legal right to use Discovery Way over the BLM land to access the remote parcel.  Concurrent with the purchase, Woody Creek took out an indemnity policy with a local title company underwritten by Fidelity.[2]  That policy states that it will cover loss or damage sustained or incurred by reason of "[u]nmarketability of title" or "[l]ack of a right of access to and from the land."  [ECF No. 32, Ex. at 1 §§ 3, 4.]

Later when attempting to sell one of the subdivided lots on the remote parcel, Woody Creek realized it might lack access to Discovery Way, and Fidelity, pursuant to the indemnity policy, initiated a quiet title action regarding access to the parcel.  After the quiet title action was filed, the BLM and Fidelity (on behalf of Woody Creek) entered into negotiations.  The BLM granted Woody Creek a Right-of-Way over its property.  [ECF No. 32, Ex. C.]  This Right-of-Way grants a "non-exclusive right to operate, maintain, and terminate an access road . . . in accordance with the terms, conditions and stipulations of [the Right-of-Way] document and applicable regulations." *Id.* at 1.  The Right-of-Way terminates on December 31, 2041, "unless, prior thereto, it is renewed, relinquished, abandoned, terminated, or modified pursuant to the terms and conditions of this instrument or of any applicable Federal law or regulation." *Id.*  The parties appear to

---

[1] The parties variously refer to this parcel as the "remote parcel" or "parcel VI."
[2] That company, Pitkin County Title, is also a defendant in this case, although the claims asserted against it are unrelated to the motion for partial summary judgment.

agree that this is a revocable instrument, although I cannot find anything in the instrument itself that suggests the BLM has the right to revoke it prior to its 2041 expiration.[3]  Woody Creek also claims—and Fidelity does not appear to dispute—that the Right-of-Way does not allow for the extension of utilities and that it has been unable to sell the parcel due to lack of permanent access. [ECF No. 33 at 3.]

Woody Creek seeks summary judgment on its claim for declaratory relief that the Right-of-Way is not a right of access and therefore the policy provides coverage.  Fidelity is seeking summary judgment on its claim for declaratory relief that the grant *is* a right of access and therefore the policy *does not* provide coverage.  Relatedly, Fidelity seeks summary judgment dismissing Woody Creek's claims of bad faith denial of coverage. The Court held oral argument on the cross motions on April 24, 2014.[4]

## II.   Discussion

### a.   Standard of Review.

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving

---

[3] There are provisions in the agreement, for example, that "[f]ailure of the holder to comply with applicable law or any provision of this right-of-way grant or permit shall constitute grounds for suspension or termination thereof." [ECF No. 32, Ex. C at 2.]  On its face, it does not appear to be revocable without cause.  For purposes of these motions, however, the Court will treat the Right-of-Way as revocable by BLM at any time for any reason.

[4] Fidelity argues that the Court ought to dismiss Woody Creek's cross motion due to non-compliance with D.C.COLO.LCivR 56.1(b) (requiring a cross motion for summary judgment to be set out in a separate motion) and Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record" in a motion for summary judgment).  I prefer to resolve the pending motions on their merits.  *See Smith v. Ford Motor Co.*, 626 F.2d 784, 796 (10th Cir. 1980), *cert. denied*, 450 U.S. 918 (1981) ("Considerable deference is accorded to the district courts' interpretation and application of their own rules of practice and procedure.").

party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

    b. **Rules of Insurance Policy Interpretation.**

"The terms of an insurance policy are interpreted in accordance with general rules of contract interpretation, and should be construed to promote the intent of the parties." *Union Ins. Co. v. Houtz,* 883 P.2d 1057, 1061 (Colo. 1994) (citation omitted). The meaning of an insurance contract should be interpreted as it would be understood by persons of ordinary intelligence. *Simon v. Shelter General Ins. Co.,* 842 P.2d 236, 240 (Colo. 1992). "In construing a policy, words should be given their plain meaning according to common usage, and strained constructions should be avoided." *Compton v. State Farm Mut. Auto. Ins. Co.,* 870 P.2d 545, 547 (Colo. App. 1993). "Where terms in an insurance policy are ambiguous, [courts] construe the terms against the drafter and in favor of providing coverage to the insured." *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 820 (Colo. 2004).

    c. **The Indemnity Policy Covers the Remote Parcel.**

No one disputes that the indemnity policy covers the remote parcel. At the hearing, Fidelity freely conceded that the policy requires them to remedy a lack of access or pay money. Indeed, none of the material facts are disputed in this case. The only disputed issue is whether,

as a matter of law, the Right-of-Way granted by the BLM satisfies Fidelity's obligations under the policy.

### i. Lack of Access.

Woody Creek identifies two provisions of the indemnity policy that it believes Fidelity failed to perform. The first is the provision providing coverage for damages from a lack of a right of access. Fidelity argues that the Right-of-Way cured the lack of a right of access; Woody Creek argues that the Right-of-Way is not a "right" because it is revocable.

The gravamen of Woody Creek's argument appears to be that insurance policies are to be construed according to the plain and ordinary meaning of the terms, and in the event of an ambiguity the court needs to construe the ambiguous term in favor of the insured being covered. Woody Creek attempts to demonstrate the ambiguity of "a right of access" by offering the affidavit of Willis V. Carpenter (a lawyer and author of treatises on Colorado insurance and property law) stating that "[r]ight of access means legally enforceable permanent right of access" and that "[t]he Right of Way does not provide Woody Creek with a legally enforceable permanent right of access to the property insured by the Fidelity Title Policy because it is revocable and terminates in 30 years." [ECF No. 33, Ex. 2, ¶¶ 11, 12.]

But in response, Fidelity cites a treatise authored by the same Mr. Carpenter in which he states:

> A frequent problem in Colorado is access dependent upon a revocable permit or license issued by the Bureau of Land Management, Forest Service, railroad (for getting across the tracks), utility company, or other public or private entity. If the company insures access, but the permit or license is later revoked, it could be anticipated that the company would be liable, unless revocation occurred because the insured violated the terms of the permit or license.

Willis V. Carpenter & Blair E. Daniels, *Colorado Real Estate Practice* § 7.1.3.

Mr. Carpenter's affidavit and treatise seem to be at odds. The treatise seems to foresee *possible* liability in the event of the revocation of a permit. The affidavit considers such a revocable permit *presently* problematic. Woody Creek's strongest argument, therefore, is that the meaning of "a right of access" is ambiguous and ought to be construed generously in favor of the insured.

But the fact that Mr. Carpenter's writings support both sides in this fight does not mean the meaning of "a right of access" is ambiguous to the point of being a genuinely disputed material fact. Rather it suggests that Mr. Carpenter's affidavit is not particularly reliable evidence in this case due to it being contradicted by his treatise. What Mr. Carpenter says about rights of access also goes to the ultimate issue in these motions—a legal issue that is squarely in the Court's wheelhouse. While Mr. Carpenter's opinions on the matter are illuminating, they do not generate a material fact issue even if we look only at his affidavit and ignore the treatise. That is, an expert's legal conclusion cannot be offered as a way to overcome summary judgment. *Martinez v. CO2 Servs., Inc.*, 12 F. App'x 689, 694-95 (10th Cir. 2001) ("A conclusory affidavit from an expert witness is therefore insufficient to defeat summary judgment.").

Woody Creek suggests that other courts have held that title insurance covering lack of access must cover "reasonable access" as the insured would understand such a term. *See Marriott Fin. Servs., Inc. v. Capitol Funds, Inc.*, 217 S.E.2d 551, 565 (N.C. 1975) ("We hold that when an insurer contracts to insure against lack of access to property, it must be deemed to have insured against the absence of access which, given the nature and location of the property, is reasonable access under the circumstances. In

[the] instant case mere pedestrian access cannot be deemed to be reasonable access."). But *Mariott* concerned the reasonable expectation that commercial property adjacent to a busy street would have vehicular access. It does not follow that Woody Creek would reasonably believe that "right of access" here meant permanent access now.

Moreover, as Fidelity points out, the discussion of rights of access in *Marriott* is dicta. The *Marriott* court explained that it made the ruling about pedestrian access not being reasonable access but nonetheless agreed with the lower court's dismissal of the title company defendant on other grounds. Specifically, the issue of denial of access had not arisen on the facts of that case because the plaintiff never applied for a driveway permit. *See also Riordan v. Lawyers Title Ins. Corp.*, 393 F. Supp. 2d 1100, 1105 (D.N.M. 2005) (calling that section of *Marriott* dicta); *Gates v. Chicago Title Ins. Co.*, 813 S.W.2d 10, 12 (Mo. Ct. App. 1991) (same).

Finally, Woody Creek cites another case from Colorado for the proposition that a revocable offer to sell an easement to a neighbor who would otherwise be entitled to an easement of necessity did not create a right of access. The case, *Bear Creek Dev. Corp. v. Genesee Found.*, 919 P.2d 948, 952 (Colo. App. 1996), does not help determine the resolution of the instant case. In *Bear Creek*, the Colorado Court of Appeals held that an offer to sell someone an easement was not a right of access because the offer was revocable. A landowner, facing potential condemnation for a neighbor's easement of necessity, made an offer to sell the neighbor an alternative easement. The court held that such an offer was not a right of access, and the neighbor was still entitled to his easement of necessity. I agree that a revocable offer is not a right of access. If the offer had been

accepted—and a valid, express contract for an easement created—then that would have been a different question, and one that the *Bear Creek* court never addressed.

In contrast, Fidelity offers a case that closely mirrors the facts here. In a case out of Maine, the Court of Appeals for the First Circuit found that a title insurance policy did not provide coverage where a landowner purchased a lot lacking present access but where multiple possibilities existed for the landowner to secure access. Specifically, the court held that

> [t]he Chicago Title insurance policy nowhere provides any assurance of deeded access. All that is protected is a "right of access," which could be secured in a variety of ways. No doubt deeded access-e.g., a perpetual easement granted in a deed by the owner of the intervening property-would be more valuable than, say, an easement by necessity under state law or a year-to-year license for a fee, such as that originally secured by [the plaintiff] but allowed to lapse. Read according to its terms, the policy does not cover a lawsuit whose gravamen is the promise of something different from and more valuable than a generic right of access.

*United Bank v. Chicago Title Ins. Co.*, 168 F.3d 37, 39 (1st Cir. 1999).

Woody Creek tries to distinguish *United Bank* by arguing that the plaintiff in that case specifically sought "deeded access" which is not what Woody Creek seeks in the instant case. Frankly, as I understand it, Woody Creek is asking for the functional equivalent of deeded access, and the fact that Woody Creek refrains from using the magic words "deeded access" does not effectively distinguish the case. Woody Creek also points out that there was an issue of fact in *United Bank* as to whether access by water was available which is not a question present here. That is true but irrelevant. The discussion of access by water appears to be dicta in *United Bank*, where the court identified the other options (quoted above) for securing access.

Ultimately Fidelity identifies the crux of these motions for summary judgment: "If at some future point in time Woody Creek loses its right of access to insured property,

then it may make a claim, and the coverage issues might be different. Today, however, Woody Creek fails to present a covered claim." [ECF No. 32 at 6 (citing Cathy Stricklin Krendl, *Colorado Methods of Practice* § 63.3 (6th ed. 2013) ("Coverage for access typically is triggered only when an insured is denied a right of access to the land").] I agree that the plain, unambiguous meaning of "a right of access" includes the revocable Right-of-Way that Woody Creek currently possesses over Discovery Way. Fidelity may be obligated to pay money or cure a lack of access in the future if Woody Creek ever loses that access, but that is a question for another day.

### ii. Marketability of Title.

The second condition in the Fidelity policy that arguably triggers coverage for the remote parcel is the guarantee of marketability of title. Woody Creek argues that because the Right-of-Way is revocable, the price of the land has dropped and any buyer would likely face future litigation. It suggests that this possibility of future litigation over a right of access makes title unmarketable. *See Knight v. Devonshire Co.*, 736 P.2d 1223, 1225 (Colo. App. 1986) ("To be marketable, a title must be such as to make it reasonably certain that it will not be called into question in the future so as to subject the purchaser to the hazard of litigation.").

Marketability of title should not, however, be confused with the value of the title. *Cf. Edwards v. St. Paul Title Ins. Co.*, 563 P.2d 979, 980 (Colo. App. 1977) (value of the property "has nothing to do with the title to the property and the marketability of the title"). Fidelity does not dispute that the value of the land would be greater if Woody Creek had permanent legal access. But even a complete lack of access, Fidelity points out, does not make title unmarketable. *See Campbell v. Summit Plaza Associates*, 192

P.3d 465, 473-75 (Colo. App. 2008) (holding that a lack of access does not constitute an encumbrance capable of violating the covenant against encumbrances in a warranty deed); *Mostrong v. Jackson*, 866 P.2d 573, 578 (Utah Ct. App. 1993) (marketable title does not necessarily include legal access to property).

Simply because there might be litigation in the future surrounding rights of access to this parcel does not make title unmarketable. That future litigation, if it occurs, will not involve the issue of whether title is valid or who possesses title. The title in this case, therefore, is marketable.

### d. Bad Faith Claims.

Because Fidelity never denied coverage, Woody Creek's claims of bad faith relating to the denial of coverage fail as a matter of law. "The issue of coverage is a central predicate to any claim of bad faith breach of the insurance contract." *Cary v. United of Omaha Life Ins. Co.*, 91 P.3d 425, 427 (Colo. App. 2003), *rev'd on other grounds*, 108 P.3d 288 (Colo. 2005); *Miller v. Hartford Cas. Ins. Co.*, 160 P.3d 408, 412 (Colo. App. 2007) (upholding summary judgment disposing of claims of bad faith breach of insurance contract where there was no underlying duty to defend or indemnify).

## III.   Conclusion

You can't always get what you want, but in this case Woody Creek got what it needed under the indemnity policy provided by Fidelity—a revocable, 30-year Right-of-Way from the BLM. As a matter of law, the Right-of-Way, even though it is not

permanent and is revocable, constitutes a right of access as contemplated by the insurance policy. Furthermore, the revocable Right-of-Way does not render the title unmarketable.[5]

1. Fidelity's partial motion for summary judgment [ECF No. 32] is GRANTED.
2. Woody Creek's cross-motion for partial summary judgment [ECF No. 33] is DENIED.

DATED this 5th day of May, 2014.

BY THE COURT:

*[signature]*

_____
R. Brooke Jackson
United States District Judge

---

[5] Because I find that Fidelity has satisfied its obligations under the indemnity policy to guarantee a right of access and to provide marketable title, I do not address its alternative arguments that various policy exclusions apply to this case.